## ALEXANDER H. PECK et al. *vs.* INGRAHAM and READ.

On the 10th of February, 1842, the president and directors of the Grand Gulf R. R. and B. Company, by deed conveyed, assigned, and delivered to J. L. and A. I. all their property real and personal, effects, choses in action, and evidences of debt, with a few specified exceptions, to be held by them, " and the survivors of them, and their heirs, executors, administrators, and assigns of such survivor," in trust for the payment of the debts of the corporation. During the same year J. L. died, after the trust had been accepted by the trustees; and on the 1st of December, 1842, the corporation and A. I., the surviving trustee, executed a new deed, by which they conveyed, assigned, and delivered to the said A. I. and G. R., all the property, effects, choses in action, evidences of debt, &c., embraced in the original deed, to be held by them for the same uses, and subject to the same trusts specified in the original deed; which latter trust was accepted by A. I. and G. R.  Among the assets assigned, was a note made by P. and others, on which suit was pending in the name of the corporation at the time of the assignment, and on which judgment was afterwards recovered.  Subsequently the corporation was dissolved by proceeding of *quo warranto*, and A. I. and G. R. filed their bill in chancery, alleging that they were without remedy at law to enforce the judgment, and praying an account of the amount due upon it, and a decree against the said P. and others for its payment.  The answer admits the material allegations of the bill, but makes defence, denying that A. I., the survivor of J. L. and the corporation, had any power to make the second deed, or to convey to G. R. any title or interest in the trust assets, and further insists that in the pleading in the suit, the corporation admitted that the note sued on had been transferred to J. L. and A. I., and the judgment was thereby of record in favor of them, the bank being but a nominal party to the suit, and therefore the remedy to enforce the judgment is complete at law.  *Held*, that the original deed gave the power of assignment to the surviving trustee, and that the title of A. I. and G. R. as trustees, is valid in law.

The terms employed, " the survivor or his assigns," necessarily import the power of transfer by the survivor, which is unrestricted by any other terms employed in the instrument, and must, therefore, be understood as having been intended to have their full legal force, and consequently they confer the power of assignment, whether by will or deed *inter vivos*.

Peck et al. *v.* Ingraham and Read.

A person may be entitled to the use and benefit of a suit, and not be techni-
cally a party to it; as, for example, a suit may be prosecuted in the name of
a party holding the legal title in his own name, but as trustee for another,
who may be entitled to the avails of the suit, and that may appear in the
pleadings; yet, that would not make the *cestui que trust* the legal party to
the suit. *Held*, that in this case, A. I. and J. L. were not parties to the
original suit.

In error from the southern district chancery court; Hon.
James M. Smiley, vice-chancellor.

The opinion of the court, and the points made by counsel,
contain the facts of the case.

*John B. Coleman*, for appellants.

Our first position is, that Read, one of the complainants, has
no interest whatever in the subject-matter of the suit, and is
therefore improperly a party complainant.

We hold that the title to the judgment sued upon, passed to
Lindsay and Ingraham by the deed of February 10, 1842;
that the subsequent deed from the bank and Ingraham, to
Ingraham and Read, was not in the execution of the trusts and
powers conferred by the first deed, and is therefore a nullity.

The general principle, we presume, will not be controverted,
that where a personal trust and confidence is conferred, that trust
is not susceptible of being transferred or delegated to another.

It is contended, however, by the counsel of defendants in
error, that the first deed contained an express grant of power to
the survivor of the assignees, to assign or transfer the trust.
The *habendum* and *tenendum* clause of the deed is relied upon,
as containing this grant. It is in these words: " To have and
to hold all and singular the premises given, granted, &c., to the
said party of the second part, and to the survivor of them, and
the heirs, executors, administrators, and assigns of such sur-
vivor."

The use of the word " assigns," it is contended, gives to the
survivor the power to make any assignment he may think
proper, of the trust.

We think differently; we think that no such power was con-
ferred, or intended to be conferred; we consider that the words
executors, administrators, heirs, and assigns, are mere words of

limitation, intended simply to designate the character of the estate intended to be passed by the deed, namely, an estate in fee-simple. 4 Cruise, 26, 289.

Suppose Lindsay and Ingraham had both died, can it be contended that the executor or administrator of the survivor would have a right to administer this trust? or that the heirs of the survivor would, upon his death, become instantly vested with all the powers conferred by the deed?

And yet if the use of the word assigns be held to confer upon Ingraham the power to transfer the trust, it follows *ex necessitate*, that upon his death, without having made an assignment, his heirs or personal representatives would at once become trustees in his stead. Can such have been the intention of the grantors? Could they have deliberately contemplated the possibility of this high personal trust being delegated to children, possibly to infants, or to utter strangers, who might take out letters of administration on the estate of the survivor? The existence of such an intention is irreconcilable with the magnitude and importance of the trusts declared in the deed.

" No person interested could be advised to rest satisfied with the appointment of a new trustee under a power, unless the terms of the power clearly and distinctly authorize the appointment in the particular event which may have occurred. If there be the slightest doubt as to the validity or application of the power to the case in question, the appointment, for the security of all parties, should be made only under the sanction of the court." Hill on Trustees, 190; Ib. 175.

Do the terms of the power, in the first deed, clearly and distinctly authorize the appointment of Read? Is there no doubt, as to the intention of the grantors to authorize such an appointment? We think that something more than the use in the deed of the mere formal words, " heirs, executors," &c., will be held necessary to evidence a design of conferring a power at war with the whole tenor and character of the instrument.

The case of *Cole* v. *Wade* is one directly in point, and fully sustains our position.

In that case, the testator devised and bequeathed his estate

to his executors in trust for the benefit of such of his relations, as should be selected by his executors, and the heirs, executors, and administrators of the survivor of them. The surviving executor died, having first made a will, in which he appointed his executors for the specific purpose of executing this trust. The court held that the executors of the surviving executor could not execute this trust. The language of the court is: " It was contended, that independently of any more particular indication of intention, a power of this kind, to trustees, their heirs, executors, and administrators, is not confined to the trustees originally so nominated, but passes to all who may at any time sustain the character. To that position, I cannot accede. I conceive that whenever a power is of a kind that indicates personal confidence, it must *primâ facie* be understood to be confined to the individual to whom it is given, and will not, except by express words, pass to others, to whom by legal transmission, the same character may happen to belong." 29 Eng. Ch. R. 424; 16 Vesey, 44; 2 Spence, Eq. Jurisd. 38.

In the foregoing case, the words " heirs, executors, and administrators of the survivor" were used just as in the first deed made by the Grand Gulf Bank; and the court hold that they do not confer the power upon the executors of the survivor. And why ? Because in a trust which indicates personal confidence, it must be understood to be confined to the individual to whom it is given, and will not, except by express words, pass to others, &c. And the very words which are used in the Grand Gulf Bank deed, are decided not to be such express words as will pass the trust to another.

Cases we know will be cited by counsel, to the general effect, that the grant of a power to a donee and his assigns, authorizes an assignment by the donee.

All these cases which we have examined, (except one which will be noticed in a moment,) will be found to be cases of a power coupled with an interest in the donee, and in which the transfer of the estate necessarily carries with it the transfer of the power as an incident of the estate, as in the case of a lease with a power of entry, &c.

This is the rule, — " In those cases, where the power is origi-

nally authorized to be executed by the donee of the power and his assigns, where the power is annexed to an interest in the donee, it will pass with it, to any one who comes to the estate under him, though there are twenty mesne assignments, and whether the claimant is an assignee in fact, or in law, as an heir or executor." Sugden on Powers, 223.

In the case at bar, no interest whatever is coupled with the power conferred on Ingraham and Lindsay. It is a naked trust uncoupled with any interest, and conferred from personal confidence in the trustees.

The case alluded to, as constituting an exception to the foregoing rule, is *The Union Bank of Tennessee* v. *Morris, Ellicott, & Gill*, 6 Gill & Johnson, 371.

The statement of the case by the reporters, shows it to be similar to this, and the court there hold the second deed to be valid. It is to be remarked, however, that the court do not give a single reason for their decision, nor do they cite a single authority in support of it.

We submit that one decision, unsupported by reasoning, argument, or authority, ought not to be held to outweigh a continuous current of decisions sustained both by reason and authority.

We hold, then, that the deed from the bank and Ingraham to Ingraham and Read, was void; that Read has no interest in the judgment in controversy; that the suit was improperly instituted in his name, and that the bill should be dismissed.

One point we omitted to notice in its proper place : the granting part of the first deed is to Lindsay and Ingraham; neither heirs, executors, administrators, or assigns are mentioned in it. These words are only to be found in the *habendum* and *tenendum* clause. Now it is well settled that the *habendum* and *tenendum* clause in a deed is only used to limit the estate conferred. 4 Cruise, Dig. 289.

Our second position is, that the bill itself shows that Ingraham, as survivor of Lindsay, had a complete and adequate remedy at law for the collection of this judgment, and is, therefore, not entitled to invoke the aid of a court of equity.

The transcript of the judgment of the Claiborne circuit court,

filed as exhibit A. to the bill, shows that while the suit was pending in the name of the Grand Gulf Bank against Peck and Humphreys, and after the first deed of assignment was executed, the defendants. filed a special plea *puis darrein continuance*, averring that since the last continuance of the cause, the Grand Gulf Bank had transferred the note on which the suit was pending, to Lindsay and Ingraham.

To this plea a replication was filed, admitting the transfer, averring that it was made to Lindsay and Ingraham in trust for the creditors of the bank, and stating that the suit was then being carried on and prosecuted for the use and benefit of said Lindsay and Ingraham.

To this replication a demurrer was filed, which was overruled by the court, and judgment rendered for the plaintiff.

The record thus shows, that the judgment rendered was rendered for the use of Lindsay and Ingraham. The record admissions of both plaintiff and defendants, establish it as clearly, and make it as much a part of the case, as though the suit had been instituted in the name of the bank for the use of Lindsay and Ingraham.

What is the object of naming a usee in the declaration ? Simply to put upon the record, evidence that he is entitled to the proceeds of the claim when collected. This evidence has been put upon the record in this case, in the most effectual manner in which it could be done, namely, by the admissions of all the parties to the suit.

This court has held that the name of the usee may be stricken out on motion of the plaintiff. *Stamps et al.* v. *Archer*, 4 S. & M. 352.

*H. T. Ellett*, on the same side.

The assignment was made by the bank to Lindsay and Ingraham; it was a personal trust and confidence.

The power of the bank was exhausted. The second deed was in fact the deed of Ingraham alone, appointing a co-trustee to act with himself. Could he do so, by virtue of his own office ? No; for a personal confidence cannot be delegated. Hill on Trustees, 175.

If there is a power clearly given to a trustee to make substi-

tutions and appoint new trustees, he may do it, but the power must be clearly given. Hill on Trustees, 175, 190.

Does the first deed bestow the power ? The trust is personal, but the estate is conveyed to L. and I., to have and to hold to them, and the survivor of them, and the heirs, executors, administrators, and assigns of the survivor.

Does this confer the power on the survivor to appoint new trustees, and to assign the trust ?

The office of the *habendum* and *tenendum* is merely to limit the estate. 4 Cruise, Dig.

But where the powers of trustee are expressly conferred on the survivor, and his executors, administrators, and assigns, he cannot assign the trust, except by last will and testament. The use of the word "assigns" will not authorize the survivor to divest himself of the trust. *Fitley* v. *Wolstenholme*, 7 Beavan, 425; 29 Eng. Ch. R.

See also 2 Spence, Eq. Jur. 38; *Cole* v. *Wade*, 16 Vesey, 42.

Is Read then lawfully constituted a trustee ? He sues as trustee. He can do no act respecting the assets assigned, that is directed by the assignment, unless he is a trustee.

The assignment of the assets was a breach of trust by Ingraham, and though the title may pass by his assignment, and though the assignee might be charged with the trust upon the property assigned to him, that is a different question from whether he can assume to act as trustee, and execute the trusts created by the first deed.

To receive payment of this debt, to get it in, and to sue for that purpose if necessary, are powers and trusts to be exercised under the deeds. It is only as a part of these powers and trusts that the money is demanded, and the complainants sue as trustees.

*J. H. Maury*, on the same side.

*W. S. Wilson*, for appellees.

1. As to the first objection, that Ingraham had no authority to assign to Read, and to associate the latter with himself as trustee, it is submitted, that this is a matter with which the

Peck et al. *v.* Ingraham and Read.

plaintiffs in error have no concern. By the original deed, Ingraham acquired a property in the subjects conveyed. That property he could certainly convey and transfer to another, if he could not the trusts respecting it. If by the conveyance he has made, he has committed a breach of trust, he is answerable for any damage that may be sustained to the *cestuis que trust*, and to them alone. Certainly these debtors are not in an attitude to complain of any wrong done to themselves.

But all parties interested in the trust property, were satisfied with what was done. The bank was, because it joined in executing the second deed. Creditors also are recited to have approved what was done. For twelve years and more, have they acquiesced without a murmur of complaint. No averment, much less any proof to the contrary appearing in the case, it may safely be assumed, that they are content, and that this effort on the part of the debtors to protect their rights, is altogether gratuitous.

This first objection might, therefore, safely be left with the answer already given to it. But we go further, and insist that by the first deed, Ingraham, as the survivor of Lindsay, had the power conferred upon him to assign to Read. The proposition that he had not, must proceed upon the assumption either, first, that it was not the intention of the grantor, the bank, that this right of transfer should exist in him; or, secondly, that by the rules of law, the trusts themselves were not the subjects of transfer.

What the intention of the bank was, is abundantly apparent from the several parts of the original deed above referred to. The direct grant to the two trustees and the survivor of them and his assigns, together with the other passages, show conclusively that it was at the time supposed that the trusts might be transferred to other persons. This would seem to be too plain to admit of doubt. Being so, it will then devolve upon the plaintiffs in error to show that it was against law for the grantor to confer upon the trustees this power of transfer.

In support of their view, it may be said that the rule of law is, that the authority delegated to the trustees could not by them be delegated.

Undoubtedly, where a mere naked power is conferred upon one, to be exercised or not at his discretion, with no words indicating a contrary intention on the part of the donor, the rule is that his authority cannot be delegated. He cannot refer the power to the execution of another. 1 Sugden, Powers, ch. 5, p. 221.

So also is it in the case of trusts. As the trustee's authority is derived from the deed appointing him, he can have none but those which it confers; and in the absence of words importing a contrary intention, the execution of the trusts will be confined to himself, and cannot be cast upon another. 1 Sugd. 145; 2 Spence, Eq. 38.

But if the trust be granted, or the power given to the trustee or donee and his heirs, representatives, or assigns, beyond doubt, the trust or the power may be executed by the person appointed to take in default of their execution by the immediate grantee or donee. The authorities upon the subject are ample and decisive, establishing the rule, with the only restriction, that he who by transmission claims to execute a trust or power must be of the description of persons authorized to take by the original grant: as, for example, if an estate, coupled with powers, is given in trust to A. and his heirs, the heir might execute the trust in default of A.'s doing so; but a devisee of A. could not. 1 Sugden, Powers, 145.

At the place cited, Sir Edward Sugden informs us that in an old case one of the judges held that a power was not transmissible; but he was overruled by the rest of the court. On the next page he cites, with approbation, a decision by Wilmot, judge, who held that not only authorities coupled with interests, such as those in the deed of the Grand Gulf Bank, can be given to an unknown person or class, but that naked powers can be so given also. The judge is quoted as saying, — "There is a necessity for trusting persons who cannot be personally known, in order to effectuate men's intentions in the exercise of that dominion which the law gives them over their properties. There is nothing absurd in trusting persons not known, nothing incongruous or repugnant to the rules of law."

So also Spence, 2 Equity, 38, says, — "If a man appoint a

trustee of real or personal estate, or of both, *simpliciter*, adding nothing more, this does not make the heir or personal representative a trustee.    The testator may select the heir or representative, or may authorize the survivor of several trustees to commit the trust to any one he may name; but the testator only can do so," &c.    That is to say, it is consistent with law, that he who creates a trust may designate some one to execute it, in default of its execution by the immediate trustee.    But although the creator of the trust may do this, in virtue of the dominion which every owner of property has over it, yet no other person who comes to the estate as trustee can, as such, create a trustee to administer the trust, for want of that ownership and dominion.    He can only carry out the directions of the grantor of the estate, and appoint a new trustee, in case he is authorized to do so by the original grant.    The new trustee, then, becomes invested with the trust estate and the powers to be exercised over it, they having passed through the intermediate trustee as the conduit.

Chancellor Kent, 4 Com. 327, says, that if a power be annexed to an interest in the donee, it will pass by assignment, if given to the donee and his assigns.

Sir E. Sugden (now Lord St. Leonards) has a chapter on the " Transfer of Powers," in which the whole subject is explained with great clearness.    1 Powers, 221, ch. 5.    His language is,—" We must be careful to distinguish cases where the power is originally authorized to be executed by the donee of the power and his assigns; for in those cases where the power is annexed to an interest in the donee, it will pass with it to any person who comes to the estate under him, although there are twenty mesne assignments; and whether the claimant be an assignee in fact, or an assignee in law, as an heir or executor."    " In like manner, the donee of a power not annexed to an interest may delegate the power, by virtue of an express authority in the deed by which it is created."

Here Ingraham, the survivor of Lindsay, had an estate in the property.    The powers which he was to exercise were authorities coupled with interests.    They were themselves trusts

which a court of chancery would have executed, had he died without having done so.   2 Story, Eq. § 1061; 2 Spence, 81.

The trust estate itself he could have passed to any one by conveyance.   But that estate, and the executory trusts concerning it, having been given to him and his assigns by the express language of Sugden, he was authorized to transmit them to any one he might choose to designate.

*Cole* v. *Wade*, 16 Vesey, 45, has been, and may again be cited, as an authority opposed to the views I am presenting; but it is in perfect harmony with them.   There, Sir Wm. Grant expressly recognized the doctrine that trust estates, with powers to be exercised respecting them, might pass by devolution or assignment to others than the immediate donees or grantees, if there were authority for it given in the original deed or grant.   He acted on the limitation I have already stated to exist, namely, that he who claims to act as substitute must be of that description of persons designated by the instrument creating the power.

In that case, real and personal estates were given by a testator in trust to two persons, with a power to them and the survivor of them, and the heirs, executors, and administrators of the survivor to select from among his relations such as they should deem most worthy to receive his bounty.   The survivor of the two trustees by will gave the real estate to a devisee. The decision was, that the devisee could not execute the power, he not being heir; the estate having been limited with the trusts to the survivor and his heirs.   The devisee was not the person designated to execute the power by the original testator, in default of its execution by the immediate appointees.   See this case, as explained by Sir E. Sugden, 1 Powers, p. 148, 149.

*Union Bank of Tennessee* v. *Ellicott et al.* 6 Gill & J. 363, is an authority directly in point to the present case.   There, the court of appeals of Maryland sustained a deed precisely like the second which is now in question before this court.

It is hardly necessary for me to add, that Ingraham, having had the power to transfer the entire note in this instance to Read, had also the power to transfer a partial interest; it being

as well a maxim of the law, as an axiom of geometry, that " *omne majus in se continet minus.*"

Nothing can be more reasonable and convenient than this doctrine, that where provision is made for it, both trusts and powers may be transmitted and assigned. If they cannot, then all naked powers which are merely discretionary must, even against the will of him who grants them, die with the person upon whom they are conferred. And most trusts, also, after the death of the immediate trustees originally appointed, would be suspended in their administration until the aid of a court of chancery could be invoked. Certainly, confidence reposed in one, and discretion committed to him, he cannot, as a general rule, delegate to another. But if A. appoints B. to act for him, and directs that in case he shall be unable to do so, he shall select another agent, what sound reason is there why C., thus selected, shall not execute the power. He is clearly the agent of A., whom he, acting through B., has appointed. A. has conferred the power upon C., it having passed through B. as the conduit. If this be not so, then there can be no such thing as a sub-agent, which, if proclaimed to be law, would not only greatly astonish, but greatly embarrass the commercial world.

2. After the dissolution of the corporation, the assignees had no remedy at law to execute the judgment, because they were not parties to the record.

The statute Hutch. Dig. 842, provides, that if a " suit is commenced in the name of one person for the use and benefit of another, the same shall not abate," &c.

The suit was not " commenced" in the name of the bank for the use of the assignees, for the suit was already begun when the assignment was made; nor were the proceedings amended by entering the names of the assignees as usees. They cannot, therefore, invoke the aid of the statutory provision against abatements.

The death of the nominal plaintiff in the ordinary case does not work an abatement, for the reason that when it occurs there is left the real plaintiff of record, the usee, in whose name the suit can be prosecuted, and who is liable for costs. In this case, however, when the corporation was dissolved, the only

22*

plaintiff that the record disclosed had disappeared. The statute evidently contemplates only the case of a usee suing as plaintiff in the name of another.

This was the view taken of the statute in the case of these assignees and Snodgrass & Warren. Opinion Book, November term, 1850, p. 5, in which this very point was presented, and was the only one in judgment.

The record in that case showed a state of facts precisely like that in the record of the suit against Peck & Humphreys, namely, a suit instituted by the bank, an assignment of the cause of action pending the suit, and a plea and replication alleging and admitting the assignment. The corporation having been dissolved, execution was sued out by the assignees, and a forthcoming bond taken and forfeited. The execution and bond were quashed by the circuit court, and this court affirmed the judgment, saying that the assignees had mistaken their remedy.

*G. S. Yerger*, on the same side.

The first point relied on is that the remedy is at law by issuing an execution. The facts are, the suit was commenced by the Grand Gulf Bank in 1841, without suing for use of any one; but the suit was for themselves. They afterwards, in 1842, before judgment, transferred their interest in the note sued on to Ingraham & Lindsay. This was pleaded, but the plea overruled, and judgment rendered in the name of the bank alone, she being then alive, against the defendants. In 1845 the bank charter was adjudged forfeited. At common law, where a judgment is obtained, a mere equitable owner or person who has the interest can only proceed and have execution in the name of the nominal party. If he does, no execution can issue until revived in his administrator's name. So, if a nominal party dies at common law, before judgment, suit will abate unless it is revived. Our statute has altered the common law only in cases where a suit is brought in the name of a nominal party for the use of another, and the nominal party dies before judgment; in such case it provides it shall not abate, &c. But where a judgment has been got by a party in whose name suit was com-

menced, without any interest in third persons, when so com-
menced it is left as at common law. Hutch. Code, 842 ; *Grand
Gulf Bank* v. *Ward & Jeffries*, 11 S. & M.; *Grand Gulf Bank*
v. *Snodgrass*, Ib.

2. It is contended complainants have no right to sue in this
case, because Ingraham had no authority to make a second
deed of assignment. The authorities cited for this prove directly
the reverse. Every person who has interest, legal or equitable,
must be joint complainants. The authorities cited prove posi-
tively and unequivocally that an interest passed to Read. The
question was not whether such an interest had not passed as
would authorize the maintenance of a suit to recover the trust
property ; but whether the assignee, in whom the interest was
thus vested, could perform and discharge the duties of confi-
dence, &c., reposed in the original trustees. 11 Leigh, R. 349 ;
Hill on Trustees, 174, 188 ; 29 Eng. Ch. R. 424 ; 2 Spence, Eq.
Jur. 38 ; *Cole* v. *Wade*, 16 Vesey. Now, suppose the heirs and
devisees, to whom the trust property was assigned, had brought
suit to recover the trust property from a stranger, could he inter-
pose to a recovery the plea, that although an interest passed, yet,
as the heir or devisee could not perform the trusts, therefore
they should not recover ? No such case has been cited. In this
case the legal and equitable interest of the property and choses
in action vested in Ingraham, the survivor. It was vested by
the above authorities jointly in Read and himself, so far as the
legal and equitable title was concerned. If he had brought suit
in his own name he would have failed, because the equitable
interest was jointly in him and Read. After it is recovered,
what disposition shall be made of it, — how it shall be admin-
istered, — whether Read can perform any of the trusts, or
Ingraham be discharged from his original responsibility, is a
totally different question. If by Read's mismanagement, or any
other cause, he would still be liable. But if the interest is
vested, as their own authorities prove, the right, nay, absolute
necessity, for both to join to recover the trust property, is clear.
It may be, if Read sells, or does any act in performance of those
duties strictly called trusts, it may not be binding on the credi-

tors, and Ingraham may be responsible. But it surely does not lie in the mouth of the defendants, who hold the trust property, that is, the money, to say that it shall not be recovered by those in whom the legal title is, simply because after it is thus recovered, one of them may not have power to perform or do some other act in regard to the property. That the title passes, see 11 Leigh, R. 342, 346, &c., 349; Hill on Trustees, 174–188.

3. But, again. The above cases are where the trustee alone makes the conveyance or devise; in which many authorities cited by Mr. Wilson in his brief, proves he has authority to do so, namely, 1 Sugden on Powers, 145. But, as observed, this is wholly a different case. The first deed was made on The second on the          day of

This deed of trust is valid and binding only on the creditors who assent to it. As to the others, if they choose not to come in under it, they can only get what was left after paying those who accepted it. A deed of trust made for the benefit of creditors is binding. They may affirm it. Here, then, not only the surviving grantee, but the grantor, (the legal and equitable title and reversion, or resulting trust, being in them all,) join in the conveyance. No creditor dissents; no creditor objects. In such a case, where the grantor and the surviving trustees join in a conveyance of the property to others jointly upon the same trusts, it would seem there could be no objection to it by any one. It is not the mere act of the surviving trustee; it is the joint act of the party creating the trust and the trustee. Here, surely, all interest is conveyed. And if trover, or detinue, or ejectment were brought, would the party not be entitled to recover? It would not lie in the mouth of the wrongdoer to make the objection; as to him, the title is vested, and he has nothing to do with the distribution of the property or the performance of the trusts. This point has been explicitly decided by *Union Bank of Maryland* v. *Ellicott et al.* 6 Gill & Johnson's R. 663.

4. This matter has been long acquiesced in; property has been sold, rights vested, receipts given, &c., that even if creditors were now to attempt to disturb it, the court would not per-

mit them.   *Caldwell* v. *Chaplain,* 11 Leigh, R. 342.   This case proves clearly the title passes, even where the trustee cannot perform the trust acquired, and interest while it was in suit.

Mr. Justice HANDY delivered the opinion of the court.

On the 10th February, 1842, the president and directors of the Grand Gulf Railroad and Banking Company, by deed conveyed, assigned, and delivered to John Lindsay and Alfred Ingraham, all their property, real and personal, effects, choses in action, and evidences of debt, with a few specified exceptions, to be held by them, "and the survivor of them, and the heirs, executors, administrators, and assigns of such survivor," in trust for the payment of the debts of the corporation.   During the same year Lindsay died, after the trust had been accepted by the trustees; and on the 1st December, 1842, the corporation and Ingraham, the surviving trustee, executed a new deed, by which they conveyed, assigned, and delivered to the said Ingraham and George Read, all the property, effects, choses in action, evidences of debt, &c., embraced in the original deed, to be held by them for the same uses, and subject to the same trusts specified in the original deed; which latter trust was accepted by Ingraham and Read.   Among the assets assigned, was a note made by the plaintiffs in error, on which suit was pending in the name of the corporation at the time of the assignment, and on which judgment was afterwards recovered. Subsequently the corporation was dissolved by proceeding of *quo warranto,* and Ingraham and Read filed this bill in chancery, alleging that they were without remedy at law to enforce the judgment, and praying an account of the amount due upon it, and a decree against the defendants for its payment.

The answer admits the material allegations of the bill, but makes defence on two grounds: first, denying that Ingraham, the survivor of Lindsay, and the corporation had any power to make the second deed, or to convey to Read any title or interest in the trust assets; and second, insisting that in the pleadings in the suit in which the judgment sought to be enforced was rendered, the corporation had admitted, that the note sued on had been transferred to Lindsay and Ingraham, and the

judgment was thereby of record for the use of Lindsay and Ingraham, who were the real plaintiffs, the bank being but a nominal party to the suit; and, therefore, it is insisted that the remedy to enforce the judgment is complete at law.

The chancellor decreed in favor of the complainants, and the case is brought here by writ of error sued out by the defendants.

The first and most important question presented for decision is, whether the original deed of trust gave to Ingraham, the surviving trustee, the power to make the second assignment, and thereby clothe Read with the powers of a trustee for the uses and purposes stated in the original deed.

It is insisted in behalf of the plaintiffs in error, that the assignment to Lindsay and Ingraham was a personal trust and confidence, which could not be delegated except such power were clearly conferred by the deed creating the trust to them. That principle is unquestionable, and is not denied. But it is contended in behalf of the defendants in error, that the authority to make the second deed is given by the terms of the original deed, and this point we will proceed to consider.

It has already been stated, that the estate granted in the original deed was to Lindsay and Ingraham, " and to the survivor of them, and the heirs, executors, administrators, or assigns of such survivor." But for the words " and assigns of such survivor," it is not denied that there would have been no authority in the surviving trustee to make the assignment to Read. Let us, then, examine what is the legal import of the word " assigns " in such instruments.

It is said that the power to assign a trust, cannot be exercised by the heirs, personal representatives, or assigns of any trustee, unless the authority be thus limited by the terms of the original power. Hill on Trustees, 184. Sir Edward Sugden draws the distinction between powers to be executed by the donee, and those which extend to his assigns, and lays it down that the donee of a power not annexed to an interest may delegate the power, by virtue of an express authority in the deed by which it was created. 1 Sugd. Pow. 223. And it is said by another author, of high authority, that the grantor may authorize the

survivor of several trustees, to commit the trust to any one whom he may name. 2 Spence, Eq. Jurisd. 38. In *Cook* v. *Crawford*, 13 Sim. 97, where two or more persons and the survivor and the heirs of the survivor were appointed trustees to execute a trust, and the word assigns is not introduced, as connected with the original trust, the surviving trustee could not devise the trust, because the power does not embrace his assigns.

The principle upon which these authorities proceed is, that the grantor may confer upon the trustee the power to delegate the trust, and that such authority will exist by the grant to the trustee and his assigns; and we do not perceive how this conclusion could be well questioned, without annulling an important limitation contained in the deed, one which must be presumed to have been introduced advisedly.

Against this view it is urged, that it never could have been the intention of the grantor to confer trusts of so great importance and responsibility upon unknown persons, and even upon the heirs of the survivor, who might be infants, or upon unknown administrators, residing possibly out of the State, and incapable of executing the trust, but who by the strict terms of the deed, would be capable in law of taking the trust equally with the assigns. This objection is in part supported by the case of *Titley* v. *Wolstenholme*, 7 Beav. (29 Eng. Ch. R.) 426; Ib. 435, in which the doctrine is asserted that, under a power to trustees, and the survivor of them, his heirs and assigns, the survivor cannot make an assignment *inter vivos*, but may do so by testament. The reasons given for this distinction are, that the trust is presumed to be a personal confidence, from the duties and responsibilities of which the trustee cannot, of his own authority, during his life relieve himself, but that he might transfer them by will when he could no longer perform them personally, and that this may be presumed to have been contemplated by the grantor; and again, that it cannot be assumed that the author of the trust placed any personal confidence in unknown persons, to whom the trust might be transferred by the trustee during his life. It is said that the word "assigns," could not be considered as meaning the persons who

may be made such by the spontaneous act of the trustee, to take effect during his life; but it may be considered as meaning the persons who may be made such by will.

We are unable to perceive the justness or force of this reasoning; and so far as we have been able to find, it stands unsupported by other authority. It is fully met and answered by the remarks of Wilmot, quoted with approbation by Sugden. He says: " There is a necessity for trusting persons who cannot be personally known, in order to effectuate men's intentions in the exercise of that dominion which the law gives them over their property. There is nothing absurd in trusting persons unknown. . . . . It is then said that this power may devolve on infants, idiots, or lunatics, or such a number of female heirs as will make their agreement very improbable, and equivalent to a disability; . . . . but it is no reason against the creating such a power, that by an accident it cannot be exercised." 1 Sugd. Pow. 146, 147. And its fallacy is made apparent by the remarks of Sir William Grant in *Cole* v. *Wade*, 16 Ves. 45, 46. He says, " Though it seems very incongruous and inconsequential to extend to unknown and unascertained persons, the power which personal knowledge and confidence had induced the testator to confide to his original trustees and executors, yet I am not authorized to strike these words out of the will upon the supposition, though not improbable, that they were introduced by inadvertence or mistake. I do not apprehend that a bequest actually made or a power given, can be controlled by the reason assigned. The assigned reason may aid in the construction of doubtful words, but cannot warrant the rejection of words that are clear."

As to the suggestion that the conferring the trust was a personal confidence which it cannot be presumed the grantor intended should be transferred to another, during the trustee's life, it is susceptible of two very satisfactory answers: first, that the terms employed, " the survivor or his assigns," necessarily import the power of transfer by the survivor, which is unrestricted by any other terms employed in the instrument, and must, therefore, be understood as having been intended to have their full legal force, and consequently, that they confer the

power of assignment whether by will or deed *inter vivos.* Second, the power to delegate and assign the trust to others being clearly conferred in the deed, it is as much a matter of personal confidence granted to the trustee to be exercised at his discretion, as the personal grant to himself; and although the grantor might not know the persons to whom the trust might be assigned, yet the selection of such persons was a part of the very confidence which he intrusted to the original trustee. And when such a power is granted in general terms, it is doing violence as well to the legal import of the words as to the presumed intention of the grantor, to say that the power of assignment was not intended to be conferred.

We cannot, therefore, yield to the authority of *Titley* v. *Wolstenholme,* as it appears to us not to be founded on sound reason or supported by authority.

In the case of the *Union Bank of Tennessee* v. *Ellicott et al.,* 6 Gill & Johns. 363, a deed of assignment in all material respects like the deed to Ingraham and Read was sustained by the court of appeals of Maryland.

In support of the conclusion to which the authorities above cited would lead, it is not to be overlooked that by the second deed, the corporation gave its assent to the substituted assignment, and it is stated that many of the creditors consented to it. It may be true, that the corporation, having parted with the legal title by the former deed, could not resume it, by the consent of Ingraham, and make a fresh conveyance of the legal title; but upon that point we express no opinion. Yet the deed was valid as signifying the assent of the corporation, a party interested in the trust, and, in one event, one of the *cestuis que trust,* to the exercise of the power of assignment by the surviving trustee.

Upon a careful consideration, we are of opinion that the original deed gave the power of assignment to the surviving trustee, and that the title of Ingraham and Read as trustees is valid in law.

The second question raised is, whether the trustees had the right to sue out execution at law on the judgment, and therefore have no ground to come into equity to enforce it.

It appears, that pending the action at law, the defendants pleaded the transfer of the note sued on by the corporation to Lindsay and Ingraham; to which it was replied that the suit was then prosecuted for the use of Lindsay and Ingraham; and thereupon judgment was rendered for the plaintiff. It is contended in behalf of the plaintiffs in error, that by these proceedings Lindsay and Ingraham became parties to the suit, and entitled as such to sue out execution in the name of Ingraham as surviving plaintiff.

We do not consider this position tenable. It is true, the record shows that Lindsay and Ingraham were the beneficiaries of the suit, and that it was carried on for their use. But this did not make them parties to the suit in a legal sense. If judgment had been rendered against the plaintiff, an execution could not have been issued against them for the costs, nor could they have maintained a writ of error in their own names. A person may be entitled to the use and benefit of a suit and not be technically a party to it; as, for example, a suit may be prosecuted in the name of a party holding the legal title in his own name, but as trustee for another who may be entitled to the avails of the suit; and that may appear in the pleadings; yet that would not make the *cestui que trust* a legal party to the suit. And such appears to be the attitude of the suit in question; for the replication, which was admitted by a demurrer, states that the suit was carried on for the use and benefit of Lindsay and Ingraham. We do not think that, under such a state of case, Lindsay and Ingraham are parties to the suit, and that such a case is within the provisions of the statute. Hutch. Dig. 842. And this has been substantially held by this court in the case of *Ingraham and Read* v. *Snodgrass*, at November term, 1850.

We are of opinion that the decree of the chancery court is correct, and it is accordingly affirmed.